927 F.2d 596
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Irma G. HORNEY, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 89-1529.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1990.
Decided March 8, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Woodrow Wilson Jones, Senior District Judge. (CA-88-281-A-C)
 David Randolph Paletta, Paletta, Hedrick & Berndt, Boone, N.C., for appellant.
 Clifford Carson Marshall, Jr., Assistant United States Attorney, Asheville, N.C. (argued) for appellee; Thomas J. Ashcraft, United States Attorney, Asheville, N.C., on brief.
 W.D.N.C.
 VACATED AND REMANDED.
 Before WIDENER and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Irma G. Horney appeals from the district court's affirmance of the Secretary's decision to deny her social security disability benefits. Mrs. Horney argues that the Administrative Law Judge (ALJ) failed to follow the correct pain standard, improperly rejected her testimony regarding the severity of her pain, and did not base his findings of fact on a reasonable interpretation of the record. We vacate and remand.
 
 
 2
 Mrs. Horney quit work in August of 1986 because she developed pain and numbness in her right arm. She has attempted many treatments to relieve her pain including traction, physical therapy, hot packs, cold packs, ultrasound treatments, pain medications, muscle relaxers, anti-inflammatory drugs and injections. She was treated and examined by various physicians, including neurologists and neurosurgeons, and a psychologist. She was hospitalized for an extended time to attempt to find relief for the pain. Mrs. Horney had earlier undergone surgery on her back for a ruptured disc. She filed her claim for social security disability on June 22, 1987. After a hearing, the ALJ rejected Mrs. Horney's testimony as incredible and denied benefits.
 
 
 3
 We first address the ALJ's rejection of Mrs. Horney's testimony as incredible. We recently stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir.1989), that
 
 
 4
 [i]t is well settled that: "[t]he ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities.... But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, ... and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."
 
 
 5
 Quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) (citations deleted). In this case, the ALJ failed to explain his rejection of Mrs. Horney's credibility except as to grip strength and limitation of range of motion and to note some specific areas of pain. His entire ruling on credibility was that "[t]he undersigned does not consider claimant's testimony regarding the extent and severity of her symptoms to be credible." In Hatcher, we found that two minor inconsistencies in the claimant's testimony were insufficient to allow the ALJ to reject his testimony. Here, the ALJ has pointed to nothing else as the basis for rejecting Mrs. Horney's testimony and failed to note the evidence of a physician, Dr. Cupp, as noted below.
 
 
 6
 We are also concerned with the ALJ's wholesale rejection of the evidence as to Mrs. Horney's depression and mental limitations. Without any contrary medical evidence, the ALJ rejected Dr. William H. Knight's opinion on those subjects. Some of Dr. Knight's extensive qualifications bear mention. He has bachelor's and master's degrees from Michigan State University, as well as his doctorate in psychology from that school. He has done post-graduate studies at the University of Minnesota, New York University and Harvard University Medical School. He has been a member of the faculty of Michigan State University, Ohio State University, South Carolina Medical University, and the University of Maine at Kent. He is presently on the faculty of Appalachian State University. His work has been published in numerous learned journals.
 
 
 7
 Dr. Knight examined Mrs. Horney on April 8, 1988 and concluded that "[p]sychometric measures of depression and anxiety placed her at the level of hospitalized persons or the more severely depressed persons who receive out-patient treatment.... She has a serious memory impairment with recall of a variety of measures and events at the level of about two-thirds normal." As a part of his examination, Dr. Knight analyzed Mrs. Horney with reference to the Zung Depression Scale, which is a quantitative measure of depression. On this scale, Mrs. Horney "received a result similar to hospitalized, depressed patients. Her results for this category were at the low end of the category, but she was at the high end of the depressed out-patient category." Dr. Knight also analyzed Mrs. Horney with reference to the Wechsler Memory Scale, which is a scale used to appraise a patient's memory as it is related to the level of his functioning, exactly the problem faced in this and other Social Security cases. Dr. Knight related that Mrs. Horney gave evidence of considerable problems in terms of memory and found her memory quotient to be 64, which places her in the mildly retarded range in terms of memory and concentration. He noted that "specific areas that were especially deficient were those associated with auditory and visual memory as well as memory for events and situations involving three (3) or more recalls. Her memory for digits was only three (3) forward and two (2) backward, which is a serious deficit."
 
 
 8
 The ALJ did not even mention those parts of Dr. Knight's report that we have mentioned just above, but discounted Dr. Knight's evidence only because Dr. Smith, Mrs. Horney's family physician, had not picked up on Mrs. Horney's depression until after the examination by Dr. Knight, a wholly insufficient analysis. On remand, unless other evidence appears in the record, Dr. Knight's analysis must stand and the case be decided with that in mind.
 
 
 9
 The ALJ also largely ignored such evidence as to the severity and intensity of Mrs. Horney's pain that was not supported by clinical defects as well as objective medical evidence. Nowhere in his opinion does he discuss factors such as the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication and other factors which may be incapable of objective proof. As we stated in Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir.1990), "[b]ecause pain is not readily susceptible of objective proof, ... the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Once an underlying physical impairment is found that could reasonably be expected to cause pain[1] "it is incumbent on the ALJ to evaluate the effect of pain on a claimant's ability to function." Foster v. Heckler, 780 F.2d 1125, 1128 (4th Cir.1986). Such an evaluation must be done "even though its intensity or severity is shown only by subjective evidence." Hyatt, 899 F.2d at 337.
 
 
 10
 In this regard, we especially note a series of letters from Dr. Horace B. Cupp, a board certified neurosurgeon, to Dr. Smith, Mrs. Horney's family physician. Not only was Dr. Cupp a treating physician, whose opinion is entitled to special weight on that account, the letters are between the dates of September 30, 1986 and February 6, 1987, are not in connection with any claim of Mrs. Horney's, and are from one treating physician to another with respect to the condition of a mutual patient, so the letters are entitled to even more especial weight even than those of the ordinary treating physician. Of all the medical personnel who have seen Mrs. Horney, none due to education and training and opportunity to observe is more qualified to give an opinion than is Dr. Cupp. Dr. Cupp is definitely of opinion that Mrs. Horney suffers real pain, not imaginary. Excerpts from the letters follow.
 
 Letter of September 30, 1986:
 
 11
 "[A]bout 5 or 6 weeks ago ... she began to have pain in the right intrascapular, right shoulder and down the right arm with a little numbness and tingling, she says, into the 4th and 5th fingers. She has been tried on home traction, Robaxin and Wygesic and hasn't gotten any better. She cannot handle the bags of IV fluid or whatever it is she does at work, as a matter of fact, she has difficulty even with pots and pans on the stove at home."
 
 Letter of October 21, 1986:
 
 12
 "This young lady is no better.... She is still having a lot of pain at the base of her neck, pain in her right trapezius, right shoulder, radiating down her arm, into the forearm with some numbness and tingling in the thumb and index finger."
 
 Letter of December 19, 1986:
 
 13
 "This lady is not a whole lot better. I believe you got a copy of her Discharge Summary, we did just about everything we could do to figure out what was going on and really didn't come up with much."
 
 Letter of February 6, 1987:
 
 14
 "This lady is still hurting.... I did repeat an exam, there is very minimal limitation of flexion, extension, right and left lateral rotation of the neck, perhaps 5 percent. All of these maneuvers make her hurt around the blade of the right scapula, along the right trapezius area and up the right side of her neck...."
 
 
 15
 Nothing in the record contradicts Dr. Cupp's diagnosis of pain, and a decision which does not take account of such uncontradicted testimony, especially when taken together with that of Dr. Knight, and considering the rejection with little analysis of claimant's testimony as incredible, we think is not supported by substantial evidence.
 
 
 16
 Along the same line, a vocational expert was present at the hearing. He was not asked, however, to comment on the claimant's ability to function, but was only asked in what category was fitted the previous work Mrs. Horney did.
 
 
 17
 Because of the treatment, or lack of it, of the evidence of Dr. Knight and Dr. Cupp, as well as of the claimant, the judgment of the district court is vacated and the case is remanded to the district court for further remand to the Secretary to reconsider the same in a manner not inconsistent with this opinion. On remand to the Secretary, the parties may introduce such additional evidence as they may be advised is appropriate.
 
 VACATED AND REMANDED WITH INSTRUCTIONS.[2]
 
 
 [1]
 The ALJ found, and it is undisputed, that Mrs. Horney suffers from underlying medical conditions which can reasonably be expected to produce pain
 
 
 [2]
 We cannot say that the finding of the Secretary that Mrs. Horney did not have Parkinson's Disease, which was the subject of conflicting evidence, is not supported by substantial evidence